NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON RIVERA, et al., | Civil Action No.: 08-2721 (JLL) |
| Plaintiffs, | |
| v. | OPINION |
| HOPATCONG BOROUGH POLICE DEPARTMENT et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matters comes before the Court on Defendants' motion for summary judgment. Ms. Rivera brings claims against Defendants for violation of her constitutional rights pursuant to 42 U.S.C. § 1983 and her state constitutional rights pursuant to N.J.S.A. 10:6-2 (the "New Jersey Civil Rights Act"). She also brings a claim against Defendants for intentional infliction of emotional distress. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion is granted.

I.   BACKGROUND

On February 24, 2005, the Principal of Hopatcong High School, Emil Binotto, called the Hopatcong Police Department ("HPD") to report "that he had received [information] from one of his teachers . . . [that] sexually explicit photographs [were] posted on the Internet of 15 year old Keesha Verdetto . . ., a student at the High School." (Stmt. of Mat'l Facts Not In Dispute

[hereinafter "Defs.' Fact Stmt."] ¶¶ 1-2.)  When the officers arrived at the school, Principal Binotto showed the pictures to them.  (Id., at ¶3.)  Principal Binotto "retrieved the photographs from a website known as www.blackplanet.com."  (Id., at ¶ 5.)  One of the investigating officers, Officer Janosko, then "spoke with Detective Joseph Costello . . . of the Sussex County Prosecutors Office who instructed [him] to retrieve the hard drive from Verdetto's computer."  (Id., at ¶ 7.)  Officer Janosko "contacted Verdetto's mother . . . and requested that she bring the hard drive to police headquarters."  (Id., at ¶ 8.)  She agreed and consented to a police search of the hard drive.  (Id.)  Ms. Verdetto's mother told the officers that her daughter had told her that she had relayed nude images using a webcam "to a person by the name of Jonathan whom she believed lived in Chicago."  (Id., at ¶ 9.)  She said her daughter had not given "consent to have the live stream converted into digital photographs or posted on the Internet."  (Id.)

On February 25, 2005, at the request of Detective Nicholas Maresca of the HPD, Ms. Verdetto and her mother voluntarily came to the police station for an interview.  (Id., at ¶¶ 10-11.)  Keesha Verdetto told Detective Maresca what her mother had relayed to Officer Janosko.  (Id., at ¶ 11.)  She further "stated that she did not post the photographs or open an account on www.blackplanet.com."  (Id.)  In Ms. Verdetto's handwritten statement, she asserted her belief that Plaintiff Shannon Rivera or Sherelle O'Gilvie posted the pictures because, on February 22, 2005, Ms. Rivera sent an instant message to Verdetto containing one of the nude photos at issue.  (Id., at ¶¶ 13-14; see also Br. in Opp'n to Mot. for Summ. J. [hereinafter "Pls.' Opp'n"], Ex. A, Ms. Verdetto's handwritten police statement.)  She also told Detective Maresca that she thought it was either Ms. Rivera or Ms. O'Gilvie because the words used with the pictures on the website were slang used by them.  (Defs.' Fact Stmt., at ¶ 15.)  On April 14, 2005, Detective Costello

inspected Verdetto's computer and "determined that the website was not opened from [her] computer." (Id., at ¶ 18.)

In response to a grand jury subpoena obtained by Detective Maresca, Blackplanet.com provided to Detective Costello information on the account where the pictures were posted, including the Internet Protocol ("IP") address used to open the account. (Id., at ¶¶ 17, 19.) Between February 22 and February 26, 2005, "there were 4 different IP addresses . . . that accessed the account." (Pls.' Opp'n, at 6.)[1] Detective Costello next "served a grand jury subpoena upon Verizon," the Internet Service Provider for the IP address used to open the account. (Defs.' Fact Stmt. ¶ 21.) The IP address was assigned to Carlos Rivera, Ms. Rivera's father, at the address where Ms. Rivera lived at the time. (Id.) Plaintiffs assert that, because of the timing of the posting of the pictures, the pictures at issue could only have been posted by two of the four IP addresses that accessed the blackplanet account. (Pls.' Opp'n, at 7.) Plaintiffs admit that Ms. Rivera's computer was one of the two. (Id.)

On June 27, 2005, Detective Maresca called Shannon Rivera's father and asked him to come to the police station with her. (Defs.' Fact Stmt. ¶ 22.) Mr. Rivera denied knowing anything about the account or the photographs; he stated that he did not use the computer. (Id., at ¶ 25.) Ms. Rivera also denied creating the website. (Id., at ¶ 26.) Detective Marseca asserts that he then asked Mr. Rivera if he could speak to his daughter, Shannon Rivera, alone, and that Mr. Rivera agreed. (Id., at ¶ 27.) Ms. Rivera denies this, asserting that her father was told to leave. (Reply to the Stmt. of Facts [hereinafter "Pls.' Reply Facts"] ¶ 27.) Detective Maresca asserts

---

[1] Plaintiffs did not submit a counter-statement of facts in accordance with Local Civil Rule 56.1. Instead, they merely included additional facts in their opposition brief. The Court has considered these facts.

that he advised Ms. Rivera of her rights before questioning her. (Defs.' Fact Stmt. ¶ 28.) Ms. Rivera disputes this, stating that "Maresca never advised [her] of her rights[, and also] threatened [her], telling her that if she did not confess he was going to arrest her father." (Pls.' Reply Facts ¶ 28.) Ms. Rivera also asserts that Detective Maresca threw papers in her face during the questioning. (Pls.' Opp'n, at 12.) During the questioning by Detective Maresca, Ms. Rivera "denied creating the account." (Defs.' Fact Stmt. ¶ 28; see also Pls.' Opp'n, Ex. B, Trial Tr. 42:12-16.) It is undisputed that Mr. Rivera then consented to a search of his computer. (Defs.' Fact Stmt., at ¶ 30.) As a result, Detective "Maresca followed the Riveras to their home and retrieved the computer." (Id., at ¶ 31.)

On July 14, 2005, Detective Costello inspected the Rivera computer and "confirmed that the account had been opened from the . . . computer on February 22, 2005." (Id., at ¶ 32.) Detective Costello "never found the pictures themselves on [the Riveras'] hard drive." (Pls.' Opp'n, Ex. B., Trial Tr. 114:3-7.) But, he testified that he was asked only to examine the hard drive; he stated that there were many other ways the photos could have been uploaded from the computer without being on the hard drive. (Id., at 108:4-12.) Detective Costello also testified that he did not try to locate or question the man for whom Ms. Verdetto posed nude on the webcam. (Id., at 109:8-17.) The officers also did not investigate all of the other IP addresses that accessed the blackplanet account. (Pls.' Opp'n, at 10.)

On August 2, 2005, Detective Maresca spoke with a woman named Grace Molinari, whose name was associated with an IP address that had viewed the account. (Defs.' Fact Stmt. ¶ 33.) Detective Maresca reported that Ms. Molinari told him that "she was made aware of the Verdetto pictures by her daughter, Melissa Molinari, Shannon Rivera and Sherelle O'Gilvie."

(Id.)  On August 3, 2005, Detective "Maresca prepared a Juvenile Complaint against Shannon Rivera which charged her with Endangering the Welfare of a Child (N.J.S.A. 2C:24-4(b)(5)(a)) [(a second degree charge)] and Harassment (N.J.S.A. 2C:33-4(a))."  (Id., at ¶ 36.)  The second degree endangering charged was subsequently reduced to a third degree charge of "Publishing or disseminating a picture of another person in a state of undress without their consent," (N.J.S.A. 2C:14-9(c)).  (Id., at ¶ 37.)

A trial on the third degree charge was conducted on March 1, 2008, and March 6, 2008.  (Id.)  Ms. Rivera was found not guilty.  (Pls.' Opp'n, at 2.)  At the conclusion of the trial, the judge stated that "there is no linkage between the photographs being taken and Shannon Rivera that the state can establish."  (Id., at 2 (citing to the trial transcript).)  He further stated his belief that he did not "believe that the evidence suggested [that] she's guilty of anything."  (Id.)  With regard to the investigation, the judge stated: "[T]he police investigation here was . . . simply half-assed[;] [i]t was [a] bungled, inadequate, botched investigation."  (Id., at 2-3.)

## II.   LEGAL STANDARD

A court shall grant summary judgment under Rule 59© of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©.  The moving party first must show that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  Id. at 324.   The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare

allegations, or speculation.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III.   DISCUSSION

#### A.   Claims Against the Hopatcong Police Department & Sussex County Prosecutor's Office

In their opposition, Plaintiffs state that they "will not oppose [Defendants'] application with respect to the [claims against the] Hopatcong Police Department & Sussex County Prosecutor's Office."  (Pls.' Opp'n, at 1.)  Plaintiffs state that they are only pursuing the claims against the individual defendants.  Therefore, summary judgment in favor of Defendants the Hopatcong Police Department and the Sussex County Prosecutor's Office is granted.

#### B.   Claims Against Detectives Maresca and Costello

Plaintiffs argue that Detective Maresca violated Ms. Rivera's Fifth and Fourteenth Amendment  rights because she "was subject to a coercive custodial interrogation" and was not given Miranda warnings.  (Id., at 10, 14.)  They also argue that both Detective Maresca and Detective Costello violated Ms. Rivera's constitutional rights by maliciously prosecuting her. Defendants argue that Detective Maresca did not engage in a custodial interrogation of Ms. Rivera, that she was not coerced, that she was given a Miranda warning, and that, in any case, she denied any wrong doing during the alleged interrogation.  With respect to the malicious prosecution charge they argue that they had probable cause to arrest Ms. Rivera, and that, in any case, they are immune from liability.  Finally, they argue that Ms. Rivera has not stated a claim

for intentional infliction of emotion distress under the New Jersey Tort Claims Act.

    1.    <u>Unlawful Interrogation</u>

        a.    *Fifth Amendment Claim*

"[A] plaintiff may not base a § 1983 claim on the mere fact that the police questioned the plaintiff in custody without providing Miranda warnings where there is no claim that the statements obtained in violation of Miranda were used against the plaintiff because . . . violations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself." <u>Renda v. King</u>, 347 F.3d 550, 557 (3d Cir. 2003) (internal quotations omitted).  As the Third Circuit further held in <u>Renda</u>, "it is the use of coerced statements during a criminal trial . . . that violates the Constitution." <u>Id.</u>, at 559.  Here, although Ms. Rivera was charged and brought to trial, there is no allegation that any allegedly coerced statements from the interrogation were used against her at trial.  In fact, it is undisputed that she denied any wrongdoing during the interrogation.  Thus, even if Detective Maresca's interrogation was improper, Ms. Rivera has not stated a § 1983 Fifth Amendment claim against Detective Maresca based on the interrogation.  Summary judgment in favor of Detective Maresca on this claim is granted.

        b.    *Fourteenth Amendment*

The precise contours of Plaintiffs' Fourteenth Amendment claim are not clear.  Plaintiffs merely state that "Maresca did not follow police procedure," and that she was "subject to a coercive custodial interrogation."  (Pls.' Opp'n, at 16.)  "The Fourteenth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law." <u>Chavez v. Martinez</u>, 538 U.S. 760, 774 (2003) (internal quotations omitted).  Thus, the Supreme Court has held that "[c]onvictions based on evidence obtained by methods that are so brutal and so

offensive to human dignity that they shock the conscience violate the Due Process Clause." Id. (internal quotations omitted); see also Renda, 347 F.3d at 558 n.4.  The Chavez court noted that "the official conduct most likely to rise to the conscience-shocking level, is . . . conduct intended to injure in some way unjustifiable by any government interest." Chavez, 538 U.S. at 775. Applying this standard, even accepting all of Plaintiffs' factual allegations as true, the Court finds that there is no genuine issue of material fact that Detective Maresca violated Ms. Rivera's Fourteenth Amendment rights.  Plaintiffs assert that Ms. Rivera, a juvenile, was questioned without her father present, that she was threatened that her father would be arrested if she did not confess, and that papers were thrown in her face.  She did not confess; no evidence against Ms. Rivera was obtained from the questioning.  These facts do not demonstrate conduct intended to injure Ms. Rivera or that otherwise "rise[s] to the conscience-shocking level."  Therefore, summary judgment in favor of Detective Maresca is also granted with respect to this claim.

  2. Malicious Prosecution

In order to state a claim for malicious prosecution as a constitutional violation, a plaintiff must establish: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007). Defendants argue that summary judgment with regard to this claim is proper because the deetctives had probable cause to arrest Ms. Rivera, and in any case, they are protected by either absolute or qualified immunity.

Defendants assert that Detective Costello, who was acting on behalf of the Sussex County Prosecutor's office, is entitled to absolute immunity. This Court disagrees. The Supreme Court has held that absolute immunity for prosecutors does not apply to "advising the police in the investigative stage of a criminal case" as such activity "is [not] so intimately associated with the judicial phase of the criminal process, that it qualifies for absolute immunity." Burns v. Reed, 100 U.S. 478, 493 (1991); see also Odd v. Malone, 538 F.3d 202, 209 (3d Cir. 2008). Here, it is undisputed that Detective Costello was assisting Detective Maresca with his investigation. Therefore, the question is only whether Detectives Maresca and Costello are entitled to qualified immunity for their role in the arrest and prosecution of Ms. Rivera.

Qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 191 (3d Cir. 2009). Qualified immunity is not simply a defense to liability; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). A qualified immunity analysis involves a two-step process. The court must ask "whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." Bayer, 577 F.3d at 191 (discussing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The court also must ask whether the right asserted was "clearly established." Id. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Pearson, 129 S. Ct. at 822 (internal quotations omitted). Courts are "permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Bayer, 577 F.3d at 192 (quoting Pearson, 129 S. Ct. at 818).

Under the circumstances of this case, the Court will address prong two first. Under the second prong, Detectives Maresca and Costello are "entitled to qualified immunity unless it would have been clear to a reasonable officer there was no probable cause to arrest" Ms. Rivera. Gilles v. Davis, 427 F.3d 197, 205 (3d Cir. 2005). The Supreme Court has recognized that "it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). It "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005). In fact, "it is irrelevant to the probable cause analysis . . . whether a person is later acquitted of the crime for which she or he was arrested." Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)). Finally, the issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir.1984); see also Wilson, 212 F.3d at 786. Thus, summary judgment on a malicious prosecution claim is "appropriate if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for

. . . [the] arrest." Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).

To determine whether a police officer was objectively reasonable in believing he had probable cause to make an arrest, courts begin with the elements of the crime alleged. Gilles, 427 F.3d at 204. Here, Ms. Rivera was charged with Endangering the Welfare of a Child pursuant to New Jersey Statutes § 2C:24-4(b)(5)(a). This section provides:

> Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer, through any means, including the Internet, any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.

N.J. Stat. Ann. § 2C:24-4 (b)(5)(a).

Plaintiffs argue that no probable cause existed here because, although there was evidence that the account was opened from the Riveras' computer, there was "no evidence that the . . . [pictures] had been uploaded, downloaded, or distributed in any form from the Rivera computer, which was the purported basis for bringing the charges against the Plaintiff Rivera." (Pls.' Opp'n, at 9.)[2] Plaintiffs argue that the activity regulated by the statute is the dissemination of the pictures, not the mere opening of an account where pictures were posted. They argue these are two "distinctly separate act[s]." (Id., at 6.) They also focus on the fact that Ms. Rivera was acquitted of the charges, and that the judge made comments criticizing the police investigation. However, contrary to Plaintiffs' view, the question is only whether, at the time of Ms. Rivera's arrest, reasonable officers would have concluded that there was a fair probability that Ms. Rivera

---

[2]Plaintiffs do not argue that probable cause did not exist with regard to the harassment charge. Therefore, the Court focuses on the primary endangering charge.

committed the crime.

At the time of Ms. Rivera's arrest, the undisputed evidence shows: (1) the account at issue was created from the computer in Ms. Rivera's home, (2) Ms. Verdetto provided a statement to police that Ms. Rivera had sent her one of the pictures, (3) Ms. Verdetto provided a statement to police that the language on the website associated with the pictures was slang used by Ms. Rivera, (4) the statements to police by Ms. Verdetto pointing a finger at Ms. Rivera were made prior to the police determining that the account had in fact been created from Ms. Rivera's computer, and (5) Ms. Molinari reported to Detective Maresca that "she was made aware of the Verdetto pictures by her daughter, Melissa Molinari, Shannon Rivera and Sherelle O'Gilvie." However, it is also undisputed that the detectives did not find any of the photos on Ms. Rivera's hard drive, nor could they directly verify that the photos had been uploaded from Ms. Rivera's computer. But, Detective Costello testified that there were many other ways the pictures could have been uploaded onto the blackplanet site from the Riveras' computer without them being on the hard drive. While this evidence was not enough to satisfy the judge beyond a reasonable doubt that Ms. Rivera had committed a crime, this Court finds that reasonable officers could have concluded that there was a fair probability that it was Ms. Rivera who posted the pictures based on the undisputed evidence available to the detectives at the time of the arrest.

Direct evidence of the posting of the pictures is not necessary if the detectives reasonably could have inferred from the evidence taken as a whole that Ms. Rivera posted the pictures. As admitted by Plaintiffs, the Riveras' computer was one of only two computers that could have posted the pictures. The Court finds that this taken with the other undisputed evidence is sufficient to support a finding that there was at least a fair probability that probable cause existed

for Ms. Rivera's arrest; Detectives Maresca and Costello are entitled to qualified immunity.

Therefore, summary judgment in favor of Detectives Maresca and Costello is granted.[3]

3. Intentional Infliction of Emotional Distress

Defendants argue that Plaintiffs have not alleged facts sufficient to entitle them to damages under New Jersey's Tort Claims Act.  Section § 59:9-2(d) provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $ 3,600.00.

N.J. Stat. Ann. § 59:9-2(d); see also Brooks v. Odom, 696 A.2d 619, 623 (N.J. 1997) ("[A] plaintiff may not recover under the Tort Claims Act for mere 'subjective feelings of discomfort.'").  Here, Plaintiffs have not alleged that Ms. Rivera has suffered any injury covered by this section.  Additionally, although not expressly conceded, Plaintiffs provide no opposition to Defendants' motion with respect to this claim.  Therefore, summary judgment in favor of Defendants on this claim is also granted.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted.  An appropriate Order accompanies this Opinion.

DATED: February 3, 2010                /s/ Jose L. Linares
                                       JOSE L. LINARES
                                       UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs do not make any arguments regarding their New Jersey Civil Rights Act ("CRA') claim separate from their § 1983 arguments.  Therefore, because this court has found no § 1983 violation, summary judgment in favor of Defendants on the CRA claim is also granted.